UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FREDRICK EDMOND,                    )
                                    )
                    Petitioner,     )
                                    )
            v.                      )        No. 1:20-cv-02473-JPH-MJD
                                    )
DUSHAN ZATECKY,                     )
                                    )
                    Respondent.     )

**ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING
CERTIFICATE OF APPEALABILITY**

Petitioner Fredrick Edmond was convicted of voluntary manslaughter and
attempted murder in Lake County, Indiana, in 2006. Mr. Edmond now seeks a
writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent argues that
the petition must be denied because it is time-barred. Dkt. 16. Mr. Edmond
argues that his petition is not untimely because he has new evidence of his
innocence. He argues alternatively that he is entitled to equitable tolling for the
same reason. Dkt. 27; dkt. 28.

For the reasons explained in this Order, Mr. Edmond's petition for a writ
of habeas corpus is **dismissed with prejudice**. In addition, the Court finds that
a certificate of appealability should not issue.

## I. Background

On direct appeal, the Indiana Court of Appeals summarized the facts
underlying Mr. Edmond's convictions as follows:

> Cher Steward and Edmond were in a relationship and lived together
> after their twin children were born. They separated and an
> arrangement was reached whereby Edmond (actually his mother)

had  custody of the children.

Cher spent the night at the home of Alexis Hamilton as did Shawnquella Williams. The next day the three women left the house. Cher was driving Alexis' mother's car, with Alexis in the front passenger seat, and Shawnquella sitting behind Alexis. They stopped at a McDonald's and then bought some marijuana.

After driving around, they spotted Edmond's car. Cher stopped and walked to the driver's side window and she and Edmond talked of the children. There was a restraining order in effect which limited Cher's contact with Edmond. Also in Edmond's car was a woman named Ashley who was sitting next to Edmond. As Cher and Edmond talked, Ashley leaned over and rolled up the car window. Edmond rolled the window back down. Ashley made a comment about taking care of Cher's children. Cher made a verbal attack of Ashley, who in turn got out of the car, and a physical altercation occurred between the two. After two or three minutes, Alexis and Shawnquella broke up the  fight and convinced Cher to return to their car. As they left, Cher  threw a glass orange juice bottle, hitting Edmond's car hood.

Cher drove to her house and was claiming to "bust out" Edmond's windows. She went into the house, returned with a hammer,  and then headed back to Edmond's house. Cher, Alexis, and Shawnquella remained in the car in the positions previously described.

Cher pulled up next to Edmond's now unoccupied vehicle. Cher got out and tried to break a front passenger window and failed. She did succeed in breaking out a rear passenger side window before hurrying back to her car. As they prepared to leave, one of the women cried out that Edmond was standing at the right front of the car and pointing a .45 caliber pistol at them. Four to seven shots were fired by Edmond in  rapid succession as Cher sped away.

Cher stopped briefly and discovered blood coming from Alexis' mouth. Cher went around the corner and again stopped, and she then  saw that blood was gushing from Alexis' mouth. Shawnquella ran to a  neighbor's house and had them call the police while she called Alexis' mother. Cher jumped out of the car and threw away the marijuana and  the hammer.

Alexis had been shot three times, with the fatal shot entering her back, perforating her right lung, tearing her ascending aorta, and exiting through her left breast. The bullet and casings were from a .45 caliber pistol and were fired from the same weapon. Except for

2

the hammer, there were no deadly weapons in Cher's car.

During the trial, Shawnquella testified that she had told Cher, after the shooting started, to run over Edmond with the car. Other evidence showed that Edmond was never in front of the car.

Edmond rested without putting on witnesses or otherwise introducing evidence. *Edmond v. State*, 868 N.E.2d 78, 2007 WL 1651238, *1-2 (Ind. Ct. App. 2007) (*Edmond I*) (available in the record at dkt. 7-5). Mr. Edmond's theory at trial was self-defense. Trial Transcript, dkt. 8-2 at 44–45; dkt. 8-3 at 174–192.[1] The jury found him guilty of voluntary manslaughter and attempted murder. Dkt. 8-3 at 200. The jury also found that he was a habitual offender, and the trial court sentenced him to 110 years. *Id.* at 214; dkt. 8-7 at 32.

On appeal, Mr. Edmond challenged the sufficiency of the evidence to rebut his claim of self-defense. Dkt. 7-3. On June 8, 2007, the Indiana Court of Appeals affirmed his convictions. *Edmond I* at *3. Mr. Edmond did not seek transfer to the Indiana Supreme Court. Dkt. 7-1 at 8.

On May 2, 2011, Mr. Edmond filed a petition for post-conviction relief in state court. Dkt. 7-6 at 5. On December 27, 2011, his attorney filed a motion to withdraw the petition without prejudice and the motion was granted. *Id.* at 7. He next filed a petition for post-conviction relief on September 24, 2013. *Id.* He withdrew that petition on May 22, 2017. *Id.* at 11. He filed his final petition for post-conviction relief on September 28, 2017. *Id.* The post-conviction court

---

[1]The Court cites the pdf page number as the transcript appears in the record. The actual page number on the transcript may differ in some cases.

denied the petition and the Indiana Court of Appeals affirmed. *Id.* at 16, 19. The Indiana Supreme Court denied transfer on March 19, 2020. Dkt. 7-7 at 7. Mr. Edmond filed the instant petition for a writ of habeas corpus on September 24, 2020, seeking federal collateral review of his conviction. Dkt. 2.

His petition raises four claims for relief: 1) appellate counsel was ineffective in failing to raise a jury instruction issue and ineffective assistance of trial counsel; 2) trial counsel was ineffective by failing to challenge jury instructions, failing to investigate, and failing to object to perjured testimony and to suppression of favorable 911 phone records; 3) Mr. Edmond's due process rights were violated by the use of perjured testimony, faulty jury instructions, and suppression of favorable 911 phone records; and 4) newly discovered evidence in the form of three affidavits supports Edmond's self-defense theory and his other claims for relief. *Id.*

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). In an attempt to "curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law," Congress, as part of Antiterrorism and Effective Death Penalty Act ("AEDPA"), revised several statutes governing federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). One such statute is 28 U.S.C. § 2244. Pursuant to 28 U.S.C. § 2244(d)(1), habeas petitioners have one year from

the latest of four triggering dates to file their petition for a writ of habeas corpus in federal court.

### III. Discussion

**A.     Timeliness of claims**

Mr. Edmond contends that the applicable triggering date for his claim is April 2020, when he received the last of three new affidavits. Dkt. 9 at 7; 28 U.S.C. § 2244(d)(1)(D) (latest triggering date is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). The respondent argues that Mr. Edmond could have discovered the factual predicate of his claims with due diligence before his conviction became final, so Section 2244(d)(1)(A) applies.  Dkt. 16 at 5–6. "Under 28 U.S.C. § 2244(d)(1)(A), a state prisoner seeking federal habeas relief has just one year after his conviction becomes final in state court to file his federal petition." *Gladney v. Pollard*, 799 F.3d 889, 894 (7th Cir. 2015).

**1. § 2244(d)(1)(D)**

Mr. Edmonds argues that his petition was timely under 28 U.S.C. § 2244(d)(1)(D) because he brought it within a year of receiving new evidence in support of his claims.[2] Section 2244(d)(1)(D) applies only when the factual predicate of a claim could not have been discovered through due diligence until after the challenged conviction became final. "The timeliness of each claim

---

[2] Mr. Edmond makes this argument under the heading "Equitable Tolling," dkt. 28 at 7, but 28 U.S.C. § 2244(d)(1)(D) provides a new one-year limitations period for claims based on evidence that could not have been discovered with due diligence before the conviction became final. Thus, the Court analyzes the argument in the context of § 2244(d)(1)(D) and not cause and prejudice.

asserted in . . . a petition challenging a state-court conviction under 28 U.S.C. § 2254 must be considered independently." *Davis v. United States*, 817 F.3d 319, 328 (7th Cir. 2016).

Mr. Edmond offers affidavits from Sharica Herron, Niyoka Artis, and Michael Pollard. Dkt. 2-1; 2-2; 2-3. The affidavits support Mr. Edmond's claim that he shot at the car because Ms. Steward was trying to run him over. The affidavits, however, are completely unrelated to Mr. Edmond's jury instruction claims and contain no information to suggest the prosecutor knew that Ms. Steward perjured herself at trial or that Ms. Steward allegedly attempted to run Mr. Edmond over on a prior occasion. *See id.* Therefore, only Mr. Edmond's claim that trial counsel was ineffective for failing to investigate these witnesses could possibly be timely under § 2244(d)(1)(D).[3]

Niyoka Artis became Ms. Steward's boss at White Castle a few years after the incident. Mr. Artis's affidavit states that, in 2007, Ms. Steward confessed to him that she had tried to run over Mr. Edmond. Dkt. 2-2. This statement could not have been discovered before trial in 2006 because the alleged conversation between Ms. Steward and Mr. Artis did not occur until 2007. *Id.* Thus, Mr. Artis's affidavit cannot support a claim that Mr. Edmond's trial counsel's pretrial investigation was inadequate or trigger § 2244(d)(1)(D).

---

[3] Mr. Edmond's fourth claim appears to be a standalone claim of innocence based on the affidavits, but standalone innocence claims are not recognized in federal habeas proceedings. *Cal v. Garnett*, 991 F.3d 843, 850 (7th Cir. 2021) (observing that "the Supreme Court has never held that actual innocence claims, standing alone—separate and apart from any constitutional error—could support habeas relief") (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)).

Sharica Herron was at the scene of the incident and Mr. Edmond spoke with her there. Her affidavit states that Mr. Edmond was in front of Ms. Steward's car when someone yelled "run him over" and that Ms. Steward attempted to do so. Dkt. 2-1 at 2. Mr. Edmond knew Ms. Herron was a witness to the incident and could have called her as a witness at trial. Because the information contained in her affidavit could have been identified with due diligence before Mr. Edmond's trial, her affidavit does not support application of the § 2244(d)(1)(D) trigger date. *Villanueva v. Anglin*, 719 F.3d 769, 774-75 (7th Cir. 2013) (holding that petitioner's claim was not timely under § 2244(d)(1)(D) because he could have discovered the factual predicate for his claim before his sentence and conviction became final).

Michael Pollard was Ms. Steward's boyfriend. His affidavit states that Ms. Steward confessed to him shortly after the incident that she had attempted to run over Mr. Edmond. Dkt. 2-3 at 2. Mr. Pollard did not come forward with this information before trial because Ms. Steward had referred to Mr. Edmond as "Lil Pop" and Mr. Pollard did not learn his legal name until 2020. *Id.* at 2-3. Mr. Edmond did not know of Mr. Pollard until Mr. Pollard came forward in 2020. Dkt. 28 at 13.

Mr. Edmond argues that Mr. Pollard's affidavit serves as a factual predicate to his claim that trial counsel failed to adequately investigate witnesses who would have corroborated his self-defense theory. Dkt. 28 at 12. He filed his habeas petition within a year of learning the facts set forth in Mr. Pollard's affidavit. Mr. Edmond has shown that claim is timely under 28 U.S.C.

§ 2244(d)(1)(D), so it will be considered on the merits. Mr. Edmond has not shown that any other claims are timely under § 2244(d)(1)(D), so the timeliness of those claims must be considered under § 2244(d)(1)(A).

### 2. § 2244(d)(1)(A)

In Indiana, a petition to transfer must be filed within 30 days of the entry of final judgment. Ind. App. R. 9(A)(1) (2007). Here, the Indiana Court of Appeals affirmed the convictions on June 8, 2007, and Mr. Edmond did not seek transfer to the Indiana Supreme Court. Dkt. 7-1 at 8.  Mr. Edmond's conviction and sentence therefore became final on Monday, July 9, 2007, the date when the 30-day period to petition for transfer to the Indiana Supreme Court expired. *See Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012) (explaining that a conviction is "final" when the time for seeking direct review from the judgment affirming the conviction has expired). The one-year period of limitation imposed by § 2244(d)(1)(A) for filing a federal habeas petition therefore expired on July 9, 2008.

Mr. Edmond filed his federal habeas petition on September 24, 2020, some 12 years after the one-year federal statutory limit for filing a habeas petition had expired.  Mr. Edmond argues that the petition for post-conviction relief he filed in state court on May 2, 2011, makes his federal habeas petition timely.  It doesn't; that filing has no effect on the timeliness of his federal petition because the one-year federal deadline had expired on July 9, 2008, several years before he filed his state-court petition for post-conviction relief on May 2, 2011. *De Jesus v. Acevedo*, 567 F.3d 941, 942 (7th Cir. 2009) (holding that state habeas petition filed after federal time limitation expired did not restart one-year clock

8

or otherwise affect federal time limit.) Thus, his petition is untimely under § 2244(d)(1)(A).

### 3. Actual innocence

Mr. Edmond argues that the Court should excuse the untimeliness of his other claims because he is innocent. An untimely petition may indeed be excused based on equitable tolling if the petitioner makes a "gateway" showing of innocence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *McQuiggin v. Perkins*, 569 U.S. 383, 394−97 (2013). To make the required showing, Mr. Edmond must point to "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," that, when considered with the full record, makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015) (quoting *Schlup*, 513 U.S. at 324, 327).

All three affidavits support Mr. Edmond's self-defense theory that Ms. Steward attempted to run him over before he began firing shots at the car. But this theory was presented to the jury and rejected. Mr. Edmond's counsel impeached Shawnquella with her deposition testimony that Mr. Edmond was standing in front of the car when she told Ms. Steward to hit him. Dkt. 8-2 at 213-214. Furthermore, the affidavits are inconsistent with other evidence presented to the jury, including photographic evidence that Mr. Edmond's shots hit the side of the car rather than the front. Trial Exhibits, dkt. 8-5 at 50, 83-92, 102, 114-117. Considering this evidence, Mr. Edmond has not shown it is "more likely than not that no reasonable juror would have found petitioner guilty

9

beyond a reasonable doubt." *Gladney*, 799 F.3d at 896. Mr. Edmond has therefore failed to make the necessary showing of innocence to excuse his untimely petition.

Counsel for Mr. Edmond further argues that the verdicts relating to Ms. Steward and Ms. Hamilton are irreconcilably inconsistent. Specifically, he contends that because the jury found him guilty of voluntary manslaughter (not murder) of Ms. Hamilton, Mr. Edmond must be actually innocent of attempted murder of Ms. Steward. The difference between murder and voluntary manslaughter under Indiana law is whether the defendant acted under the influence of sudden heat, which is defined as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary man; [sudden heat] prevents deliberation and premeditation, excludes malice, and renders a person incapable of cool reflection." *Sanders v. Cotton*, 398 F.3d 572, 576 (7th Cir. 2005) (quoting *McBroom v. State*, 530 N.E.2d 725, 728 (Ind. 1988)). Voluntary manslaughter requires knowingly or intentionally killing another while acting under sudden heat, Ind. Code § 35–42–1–3, while attempted murder requires is knowingly or intentionally taking a substantial step toward killing another in the absence of sudden heat. Ind. Code § 35–42–1–1; Ind. Code § 35–41–5–1. Mr. Edmonds argues that he could not have had both states of mind at the same time and therefore must be actually innocent of attempted murder. Dkt. 27 at 3 ("[I]f the jury convicted him on Voluntary Manslaughter because of the presence of sudden heat, then there could not have been an absence of [sudden heat]

regarding the other victims that were in the vehicle at the time Ms. Hamilton was shot.").

In support of this argument, he relies on *Price v. Georgia*, 398 U.S. 323 (1980). There, the Supreme Court held that the prohibition against double jeopardy prevented a defendant from being retried for murder after the guilty verdict on the lesser-included charge of voluntary manslaughter was overturned on appeal. *Id.* at 327-29. The defendant could be retried only on the voluntary manslaughter charge because the first jury implicitly acquitted him of murder. *Id.*

*Price* is not controlling here because Mr. Edmond's case involves allegedly inconsistent verdicts directly returned by a jury, instead of the double jeopardy implications of an implicit acquittal. Mr. Edmonds argues that the jury's determination that he was guilty of voluntary manslaughter in the death of Ms. Hamilton renders him actually innocent of attempting to murder Ms. Steward because the two verdicts are inconsistent. Murder requires the absence of sudden heat while voluntary manslaughter requires its presence.  But the jury may have been convinced that he was guilty of attempting to murder Ms. Steward yet returned a verdict of voluntary manslaughter instead of murder as to Ms. Hamilton in an act of lenity, compromise, or even mistake. *See United States v. Powell*, 469 U.S. 57, 65 (1984). For this reason, and consistent with federal precedent, *see id.*, Indiana courts do not "interfere with jury verdicts alleged to be inconsistent or irreconcilable." *Beattie v. State*, 924 N.E.2d 643, 646 (Ind. 2010) (overruling outlier case that corrected contradictory verdicts adopting rule

11

of Powell that jury verdicts are not reviewable on grounds that they are contradictory).

Furthermore, "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Powell*, 469 U.S. at 67. Here, Mr. Edmond failed to exhaust his sufficiency of the evidence claim when he did not seek petition to transfer from the Indiana Supreme Court on direct appeal, and his petition in this Court does not raise a sufficiency claim.

Mr. Edmond has not shown that he is actually innocent. Therefore, while his claim that trial counsel was ineffective for failing to investigate Ms. Steward's boyfriend, Mr. Pollard, will be considered on the merits, all other claims must be **dismissed as untimely**.

### B. Merits of § 2244(d)(1)(D) Claim

Mr. Edmond claims that his trial counsel was ineffective when he failed to investigate Ms. Steward's boyfriend, Mr. Pollard, who would have testified that Ms. Steward told him that she tried to run over Mr. Edmond. Mr. Edmond did not present this claim to the state court—he only learned of Mr. Pollard in 2020 after completing the state post-conviction process. Thus, the Court addresses it on the merits. *See Guest v. McCann,* 474 F.3d 926, 930 (7th Cir. 2007) (bypassing question of whether a procedurally defaulted claim could have been exhausted in a successive state-post conviction petition and addressing it on the merits).

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984).

To establish that "counsel's assistance was so defective as to require reversal," a petitioner must show: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673–74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

"In assessing the reasonableness of an attorney's investigation[,] a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). Here, Mr. Edmond did not know of Ms. Steward's boyfriend and thus could not have alerted his counsel of his existence. And Mr. Pollard was not identified by the State as a witness to the crime. None of the evidence known to counsel would have reasonably led him to seek out and question Mr. Pollard.  Thus, this case is not analogous to cases where counsel was found deficient for failing to interview known witnesses. *See*

*Stitts v. Wilson*, 713 F.3d 887, 888 (7th Cir. 2013) ("Given that Stitts's alibi was that he was at a nightclub, where there could be any number of potential alibi witnesses, the failure to explore that possibility is unreasonable.").

"The duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Without any hint in the record that trial counsel knew or should have known that Mr. Pollard existed and might be helpful to Mr. Edmond's case, trial counsel's performance was not deficient for failing to interview him. Mr. Edmond is not entitled to relief on this claim.

### IV. Conclusion

Mr. Edmond's trial counsel did not perform deficiently when he did not learn of Mr. Pollard and interview him. Mr. Edmond has not shown the existence of circumstances permitting him to overcome the expiration of the one-year time limitation for his other claims for relief, and hence is not entitled to the relief he seeks. Therefore, his petition for a writ of habeas corpus is **dismissed with prejudice**. *Pavlovsky v. VanNatta*, 431 F.3d 1063, 1064 (7th Cir. 2005) ("The dismissal of a suit as untimely is a dismissal on the merits, and so should ordinarily be made with prejudice.").

Judgment consistent with this Order shall now issue.

## V. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.'" 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted). When a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Mr. Edmond's one timely claim for relief lacks merit. The rest of his petition was filed beyond the expiration of the one-year statutory limitations period, and he has not made a gateway showing of innocence to overcome the untimeliness bar. Jurists of

reason would not disagree with this Court's resolution of this claim, and nothing about the claim deserves encouragement to proceed further.

The Court therefore **denies** a certificate of appealability.

**SO ORDERED**.

Date: 10/27/2023

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

FREDRICK EDMOND
946735
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel